1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
8

WESTERN DISTRICT OF WASHINGTON
9

10   FRANK C. BUCKNER,

11                         Plaintiff,                    CASE NO. 2:15-cv-00861 JRC

12          v.                                           ORDER ON PLAINTIFF'S
                                                         COMPLAINT
13   CAROLYN W. COLVIN, Acting
14   Commissioner of the Social Security
     Administration,
15                         Defendant.

16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

20   Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 11, 15, 16).

21          After considering and reviewing the record, the Court concludes that the ALJ

22   erred when evaluating plaintiff's credibility by employing circular reasoning to conclude

23

24

first that plaintiff performed his activities of daily living differently than plaintiff

testified, then relying on this speculation to support his adverse credibility determination.

For this reason and for the reasons discussed herein, the Court concludes that the

ALJ committed harmful legal error in his written decision. Therefore, this matter is

reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting

Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, FRANK C. BUCKNER, was born in 1962 and was 50 years old on the

alleged date of disability onset of September 15, 2012 (*see* AR. 162-68, 170-75). Plaintiff

completed the tenth grade in high school (AR. 37).   Plaintiff has work experience as a

concrete finisher/cement mason (AR. 42, 203-42).

According to the ALJ, plaintiff has at least the severe impairments of "spine

disorders and dysfunction of the major joints (20 CFR 404.1520(c) and 416.920(c))"

(AR. 23).

At the time of the hearing, plaintiff was sharing a house with his girlfriend (AR.

44).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42

U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42

U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and

following reconsideration (*see* AR. 69-77, 78-86, 89-98, 99-108). Plaintiff's requested

hearing was held before Administrative Law Judge Tom L. Morris ("the ALJ") on

September 24, 2013 (*see* AR. 35-66). On October 31, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 18-34).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Did the ALJ conduct an improper credibility evaluation; (2) Did the ALJ improperly evaluate lay witness statements; (3) Did the ALJ improperly assess the opinions of plaintiff's treating and examining providers; and (4) Did the ALJ conduct an improper step five analysis (*see* Dkt. 11, p. 2).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

**(1)      Did the ALJ conduct an improper credibility evaluation?**

Plaintiff contends that the ALJ erred by relying on plaintiff's activities of daily living to support the adverse credibility determination and by relying on a lack of support from the objective medical evidence. Defendant contends that there is no error.

Plaintiff testified that he has significant pain that prevents him from doing many of the activities of daily living that he was able to do before his alleged onset date, such as shopping, cooking, car repair and playing with his grandchildren (*see* AR. 25, 49, 55-56,

197, 245).  The ALJ found that plaintiff's subjective complaints of pain were inconsistent

with his activities of daily living, most of which plaintiff testified he was incapable of

doing without significant pain or was limited in how he did them because of pain *(see*

AR. 25).  In this regard, there is a fundamental disconnect between what the ALJ claimed

was plaintiff's testimony and plaintiff's actual testimony. The determination of whether

or not to accept a claimant's testimony regarding subjective symptoms requires a two-step

analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th

Cir. 1996) (*citing Cotton v. Bowen*, 799 F.2d 1407-08 (9th Cir. 1986)).  First, the ALJ

must determine whether or not there is a medically determinable impairment that

reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§

404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82.  Here, the ALJ found that

plaintiff's "medically determinable impairments could reasonably be expected to cause

the alleged symptoms;  .  .  .  ." thus satisfying this first step (AR. 25). *See id.*

Once a claimant produces medical evidence of an underlying impairment, the ALJ

may not discredit then a claimant's testimony as to the severity of symptoms based solely

on a lack of objective medical evidence to corroborate fully the alleged severity of pain.

*Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton,*

*supra*, 799 F.2d at 1407); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 at *2,

1996 SSR LEXIS 4 at *3 (this Ruling emphasizes that a claimant's "statements about the

intensity and persistence of pain or other symptoms or about the effect the symptoms

have on his or her ability to work may not be disregarded solely because they are not

substantiated by objective medical evidence"). Here, other than plaintiff's activities of

daily living, the objective medical evidence is the only additional reason for the ALJ's adverse credibility determination. Therefore, because the Court concludes herein that the ALJ's reliance on plaintiff's activities of daily living is not supported by substantial evidence in the record as a whole, the ALJ's finding regarding a lack of substantiation from the objective medical evidence does not adequately support the adverse credibility determination even if this reason is supported by substantial evidence, which it does not appear to be in this case. *See id.*

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen*, *supra*, 80 F.3d at 1284 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Reddick, supra*, 157 F.3d at 722 (*citing Bunnell v. Sullivan*, *supra*, 947 F.2d at 343, 346-47). Here, the ALJ relies on a finding that plaintiff's allegations regarding functional limitations are not consistent with his activities of daily living (AR. 25).

Regarding activities of daily living, the Ninth Circuit repeatedly has "asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at

603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn, supra*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Here, as noted, the ALJ does not make any specific finding regarding transferability, and explicitly relies on a finding of an inconsistency between the alleged functional limitations and plaintiff's activities of daily living (AR. 25).

The Ninth Circuit recently revisited this issue of activities of daily living and their consistency with pain-related impairments described by a claimant:

> [T]he ALJ erred in finding that these activities, if performed in the manner that [the claimant] described, are inconsistent with the pain-related impairments that [the claimant] described in her testimony. We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day. *See, e.g., Smolen v. Chater*, 80 F.3d , 1273, 1287 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted in original)); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.") Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," we have held that "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted in original): *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical difference between activities of daily living and activities in a full-time

job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted in original)).

*Garrison v. Colvin*, 759 F.3d 955, 1016 (9th Cir. 2014).

Here, the ALJ's implied finding that plaintiff conducts his daily activities differently than he indicates is not based on substantial evidence in the record, but is based on speculation. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22 (an ALJ may not speculate). In order to avoid circular reasoning, an ALJ must have a valid reason for finding a claimant not credible before finding that a claimant does his activities of daily living differently than the claimant testifies to, then relying on this speculation regarding the daily activities in order to support an adverse credibility finding. *See id.* An ALJ's finding that a claimant is not credible must be based on specific evidence that undermines the claimant's complaints, not on findings that presume first that a claimant is not credible. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

Here, the ALJ presumes first that plaintiff is not credible by implying that plaintiff conducts his activities of daily living differently than testified to by plaintiff. For example, the ALJ notes that despite plaintiff's alleged limitations due to pain, plaintiff "was able to take on the project of doing mechanical work (replacing the CV) on his car" (AR. 25). However, when doing so, the ALJ completely ignores plaintiff's testimony regarding how he completed this mechanical work on his car. According to plaintiff's

testimony, he had replaced CD axles previously many times and it normally takes about "2 ½ hours to do it" (AR. 55). However, on the occasion relied on by the ALJ, plaintiff testified that "it took me three days [to replace the CV axle]" (*id.*) Plaintiff further explained that it "took me almost 6 hours to tear it apart; the next day I couldn't walk, and then the next day it took me almost 6 hours to put it back together" (AR. 56).

Plaintiff also indicated in his testimony that he "had to take breaks in between" (*id.*). In addition, although the ALJ found that plaintiff's ability to do this mechanical work "is inconsistent with the claimant's alleged need to take Vicodin and lay down before starting his day on mornings when he wakes with severe back pain," nowhere in plaintiff's testimony regarding this mechanical work does there exist a demonstrated inconsistency with plaintiff's alleged need to take Vicodin and lay down before starting his day (AR. 25). Therefore, this finding by the ALJ is not based on substantial evidence in the record as a whole. In addition, the Court concludes that the fact that it took plaintiff three days to complete a job that "should have [taken] me like two hours to do" supports plaintiff's alleged difficulties, and demonstrates limitations regarding pace and persistence when performing an activity that potentially could be transferable to a work setting (AR. 56). Not only is this reference by the ALJ to this mechanical work improper cherry-picking and misrepresentation of the record, but also, it fails to support the ALJ's credibility determination and instead supports plaintiff's allegations of disabling limitations.

The ALJ also relied on other activities of daily living of plaintiff, including that plaintiff "washes dishes almost every day, vacuums weekly, and occasionally used to

mow the lawn [and that] he prepares food daily" (AR. 25 (internal citation to AR. 245)).

However, again, the ALJ failed to consider plaintiff's testimony regarding these

activities. For example, regarding washing the dishes, plaintiff testified that his back pain

limits how he does this activity (AR. 50). He testified that when "trying to unload the

dishwasher, I have to unload half of it, [t]hen I have to go sit down for a while" (*id.*).

Similarly, plaintiff's function report filled out by his girlfriend indicates that although

plaintiff can vacuum "on a good day," this chore takes "longer than usual, [as he] has to

take breaks" (AR. 197). Regarding the ALJ's reliance on plaintiff's indication that he

"occasionally used to mow the lawn," again the ALJ selectively cites from the record,

ignoring plaintiff's testimony that he had not been able to mow his lawn for a month

because of his back, that he usually does not "mow the lawn anymore," and that even

when he did mow the lawn, he only could mow half of the lawn before his girlfriend had

to take over (AR. 49). This allegation is supported by the function report filled out by

plaintiff's girlfriend, who indicates that although plaintiff mows "parts of the lawn," she

"end[s] up finishing [it]" (AR. 197). Finally, regarding the ALJ's reliance on plaintiff's

ability to prepare food daily, the ALJ again tells only part of the story, and neglects to

mention that plaintiff indicated that the kind of food he prepares include cereal,

sandwiches, and frozen foods (AR. 245). Again, plaintiff's allegations also are supported

by the function report filled out by his girlfriend, who indicates that plaintiff's ability to

prepare meals is limited because "standing over stove too long causes back pain to flare"

(AR. 197). As noted by the Court already, plaintiff's girlfriend indicates that plaintiff

must take breaks while doing basic household chores (*see id.*). When consideration is

given as to how plaintiff indicated that he conducts these activities of daily living, none

of them are inconsistent with his alleged limitations.

When discussing plaintiff's activities of daily living, the ALJ notes that plaintiff

drove about 20 miles to attend his hearing, however, the ALJ fails to take note of

plaintiff's testimony that this amount of driving was unusual for plaintiff (AR. 52-53).

Other than attending his hearing, plaintiff testified that the farthest that he has driven was

"probably a mile and a half" to the grocery store (AR. 53). The Court also notes

plaintiff's reference to the fact that his hearing notice indicates that if he does not attend

his hearing the ALJ indicated that he "may dismiss [plaintiff's] request for hearing"

without notice if the ALJ does not think that there is a good reason for the failure to

attend (Dkt. 11, p. 11 (*quoting* AR. 142)). Similarly, the ALJ also indicates that plaintiff

"drives and goes grocery shopping" (AR. 25). Regarding his grocery shopping, plaintiff

testified that he does not "usually go shopping all at one time" and that he drives

"probably a mile and a half" to the grocery store (AR. 53). On plaintiff's function report,

he indicated that he grocery shops for a half an hour at a time (AR. 246). The function

report filled out by plaintiff's girlfriend supports this allegation as she indicates that

plaintiff does grocery shopping "once a week, [for a] half hour" (AR. 198).

Regarding the above-discussed activities, the Court finds persuasive plaintiff's

assertion that a "claimant's ability to engage in activities that were sporadic and

punctuated with rest, such as housework, occasional weekend trips, and some exercise,

do not support a finding that he can engage in regular work activities" (Dkt. 11, p. 11

(*citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir, 1989)).

1    The ALJ also appears to rely on a finding that plaintiff engages with his

2  grandchildren (AR. 25). But again, the ALJ fails to note plaintiff's testimony that when

3  his grandson comes over and tries to get him to play cars on the floor, plaintiff "can only

4  stay down there for like 10 minutes" (AR. 46).

5    Finally, the ALJ indicates that despite the fact that plaintiff takes Vicodin and has

6  pain complaints, plaintiff reported on a function report form "that he can pay attention

7  'all day' and is able to follow written or oral instructions" (AR. 25-26 (*citing* AR. 248)).

8  As argued by plaintiff, this "inconsistency is non—existent because the ALJ's citation to

9  [plaintiff's] purported ability to pay attention is from December, 2012 before [plaintiff]

10  started taking Vicodin in March, 2013" (Dkt. 11, p. 11 (*citing* AR. 250, 402)). The record

11  demonstrates that plaintiff indicated at his March 15, 2013 medical appointment that

12  "Tramadol is not helping with his pain" (AR. 401). As noted by plaintiff, the record also

13  indicates that a chart note from November, 2012 does not list Vicodin as a prescribed

14  medication (AR. 404-06). Therefore, the record does not demonstrate that plaintiff was

15  taking Vicodin in December, 2012 when the ALJ referenced that plaintiff could pay

16  attention all day. Defendant's reference in a footnote to an isolated incident when

17  plaintiff was prescribed Vicodin, apparently in January, 2005 (as this is the only service

18  date on this particular chart note[1]), one month after his shoulder surgery and over eight

19

20

21  _____

22    [1] Although the page cited also lists allergies as of November 12, 2012, it indicates that the
   allergies were "never reviewed," and this notation is in a record for treatment that clearly was

23  provided on January 20, 2005, while the entire exhibit was printed on November 12, 2012 (AR.
   288). The reference to allergies on the subsequent print day attached to a treatment record from

24  eight years prior makes this reference ambiguous. It certainly does not provide substantial

1    years prior to the period of time referenced by the ALJ does not make plaintiff's ability to

2    concentrate eight years later inconsistent (*see* AR. 288-89). The Court concludes that the

3    ALJ's finding of an inconsistency between plaintiff's ability to pay attention all day in

4    December, 2012 and plaintiff's taking of Vicodin once in January, 2005 and again after

5    March 15, 2013, is not an inconsistency supported by the record as a whole.

6         The Court concludes that the ALJ's reliance on plaintiff's activities of daily living

7    to support an adverse credibility determination constitutes legal error in the

8    circumstances of this case and does not entail clear and convincing rationale for his

9    failure to credit fully plaintiff's allegations. None of the ALJ's inferences regarding how

10   plaintiff conducts his activities of daily living are reasonably drawn from the record, as

11   argued by defendant, but instead constitute speculation directly contradicted by the record

12   (Dkt. 15, p. 4). The Court already has noted that the other reason provided by the ALJ for

13   his credibility determination, lack of substantiation from the objective medical evidence,

14   cannot be the sole basis for an adverse credibility determination. *See Bunnell*, *supra*, 947

15   F.2d at 343, 346-47 (*citing Cotton, supra*, 799 F.2d at 1407); Social Security Ruling

16   ("SSR") 96-7p, 1996 WL 374186 at *2, 1996 SSR LEXIS 4 at *3.

17

18

19

20

21   _____

22   evidence for the ALJ's finding of an inconsistency. The latest examination date by a doctor
     referenced in this entire exhibit cited by defendant is June 2, 2005. There is no record in this
23   exhibit of an examination by a doctor after this date of June 2, 2005. It does not provide
     substantial evidence for an inference about inconsistency with plaintiff's ability to function in
24   2012.

1    As discussed above, the Court concludes that the ALJ failed to provide clear

2  convincing reasons for failing to credit fully plaintiff's allegations of his limitations. The

3  Court also concludes that this error is not harmless.

4    The Ninth Circuit has "recognized that harmless error principles apply in the

5  Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

6  (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th

7  Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in

8  *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the

9  ultimate nondisability determination' and that 'a reviewing court cannot consider [an]

10  error harmless unless it can confidently conclude that no reasonable ALJ, when fully

11  crediting the testimony, could have reached a different disability determination." *Marsh*

12  *v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (*citing Stout,* 454 F.3d at 1055-

13  56). In *Marsh*, even though "the district court gave persuasive reasons to determine

14  harmlessness," the Ninth Circuit reversed and remanded for further administrative

15  proceedings, noting that "the decision on disability rests with the ALJ and the

16  Commissioner of the Social Security Administration in the first instance, not with a

17  district court." *Id.* (*citing* 20 C.F.R. § 404.1527(d)(1)-(3)).

18

19    Here, had the ALJ credited fully plaintiff's allegations, the residual functional

20  capacity ("RFC") determination would have been very different as plaintiff alleged that

21  he cannot sit for long periods of time and cannot stand for long periods of time, while the

22  ALJ's RFC finding includes the "capacity to perform Light work" (AR. 49; *see also* AR.

23  24 (*citing* 20 C.F.R. § 404.1567(b) ("a job is in this [light] category when it requires a

24

good deal of walking or standing, or when it involves sitting most of the time . . . ."); 20 C.F.R. § 416.967(b)); 1983 SSR LEXIS 30 at 14 (light work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday"). The change in the RFC to include plaintiff's alleged limitations would likely have led to a finding of disability. Therefore, the Court cannot conclude with confidence "that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *See Marsh*, *supra*, 792 F.3d at 1173 (*citing Stout, supra*, 454 F.3d at 1055-56).

        (2)    **Did the ALJ improperly evaluate lay witness statements**?

Plaintiff notes that the ALJ found "generally credible the statement dated December 3, 2012, from the claimant's girlfriend, Rhonda English" (AR. 26). Plaintiff also contends that the ALJ did "not apply the proper legal standards for evaluating daily activities" when he found Ms. English to be credible but then rejected plaintiff's complaints of disabling pain, which are supported by her lay statement (Dkt. 11, p. 13). Defendant contends that the ALJ properly considered the lay witness evidence, and even if there was error in interpreting her statement, any error was harmless (Dkt. 15, pp. 5-6).

Based on a review of the record, the Court concludes that the ALJ relied on similar reasoning when discrediting this lay statement as he did when failing to credit fully plaintiff's credibility (*see* AR. 26). For example, the ALJ notes that the function report filled out by Ms. English "notes that [plaintiff] does some help with household cleaning and yard work;" and that he "prepares simple meals daily [and] . . . drives and goes to the grocery store weekly" (*id.* (internal citations to AR. 197-98)). The ALJ also notes

when discussing the lay statement from Ms. English that despite plaintiff's "complaints of pain and his medication, [plaintiff] has 'no problems' in paying attention, following written or oral instructions and completing tasks" (*id.* (*citing* AR. 200)). The Court already has concluded that the reasoning regarding these factors by the ALJ is not supported by substantial evidence in the record as a whole, *see supra* section 1. Therefore, the Court concludes that the lay statement should be evaluated anew following remand of this matter.

The Court also notes plaintiff's arguments regarding alleged errors in the ALJ's assessment of the medical evidence (Dkt. 11, pp. 14-19). Based on these arguments, the record as a whole, and the Court's determination that this matter must be reversed due to the ALJ's error in the evaluation of plaintiff's credibility, *see supra*, section 1, the Court concludes that the ALJ should evaluate anew the medical evidence following remand of this matter.

However, the Court concludes that this matter should be reversed and remanded for further administrative proceedings as opposed to remanded for payment of benefits.

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. The Court agrees with plaintiff that the opinion of examining doctor Dr. Seyed Hejazi, M.D. that plaintiff is limited to sedentary work (AR. 340) cannot be rejected properly on the basis that he opined that the specified limitations would last only for six months (AR. 26). This is because the Court also agrees with plaintiff's argument that the record following Dr. Hejazi's opinion, including continued findings of difficulties and increasing medication, "directly contradict the ALJ's claims that [plaintiff's] conservative treatment was effective  . . . ." (Dkt. 11, p. 17). However, the Court concludes that such conclusions do not mean that the opinion of Dr. Hejazi "continued to be valid," as argued by plaintiff (*id*.). It is not clear what limitations Dr. Hejazi would have opined to exist based on the record six months after his submitted opinion and based on any subsequent examination. This is an example of an outstanding issue that must be resolved. *See Smolen, supra*, 80 F.3d at 1292. In addition, as noted by plaintiff, two doctors relied on by the ALJ, Drs. Dale Thuline, M.D. and Timo W. Hakkarainen, M.D., did not have the most relevant imaging evidence and other objective medical evidence when providing their opinions (*see* Dkt. 16, pp. 5-6). Therefore, this matter should be remanded for further administrative proceedings. *See Smolen, supra*, 80 F.3d at 1292.

1   The Court concludes that whether or not plaintiff is disabled based on the record
2   as a whole is not conclusive.  If the medical evidence in the record is not conclusive, sole
3   responsibility for resolving conflicting testimony and questions of credibility lies with the
4   ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v.*
5   *Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145,
6   150 (9th Cir. 1980))).
7       As a necessity, the step five findings, as with all of the subsequent steps in the
8   sequential disability evaluation procedure, should be completed anew following remand
9   of this matter.
10
                                    CONCLUSION
11
12      Based on the stated reasons and the relevant record, the Court **ORDERS** that this
13  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §
14  405(g) to the Acting Commissioner for further consideration consistent with this order.
15      **JUDGMENT** should be for plaintiff and the case should be closed.
16      Dated this 30th day of November, 2015.
17
18                                          _____
19                                          J. Richard Creatura
                                            United States Magistrate Judge
20
21
22
23
24